PEOPLE v DAVIS

Docket No. 123773. Submitted April 17, 1991, at Lansing. Decided
August 20, 1991, at 9:45 A.M.

Leroy Davis was convicted by a jury in the Oakland Circuit
Court, Steven N. Andrews, J., of assault with intent to commit
great bodily harm less than murder. The defendant appealed,
arguing that his right to remain silent was violated when the
prosecutor cross-examined him and commented during closing
argument about his failure to claim self-defense during volun-
tary statements to the police after he was arrested and advised
of his *Miranda* rights.

The Court of Appeals *held:*

A prosecutor may not question a defendant during trial
regarding silence after being arrested and advised of *Miranda*
rights. However, where the defendant has knowingly and vol-
untarily made to the police a postarrest and post-*Miranda*
warning statement that does not include an exculpatory claim
subsequently made at trial, the prosecutor may properly ques-
tion the defendant regarding such a failure as long as the
defendant does not claim to have reasserted the right to remain
silent after making the statement.

Affirmed.

*Frank J. Kelley,* Attorney General, *Gay Secor
Hardy,* Solicitor General, *Richard Thompson,* Pros-
ecuting Attorney, *Michael J. Modelski,* Chief, Ap-
pellate Division, and *Janice A. Kabodian,* Assis-
tant Prosecuting Attorney, for the people.

*Faintuck, Shwedel & Wolfram* (by *William G.
Wolfram*), for the defendant on appeal.

Before: SAWYER, P.J., and MARILYN KELLY and
NEFF, JJ.

NEFF, J. Defendant was charged with assault
with intent to commit great bodily harm less than

murder, MCL 750.84; MSA 28.279, after he bru-tally assaulted his estranged wife. Defendant re-peatedly struck his wife with a gun, resulting in a skull fracture, extensive lacerations to her head, a bruised forearm, and a fractured hand. Defendant was also charged with felonious assault, MCL 750.82; MSA 28.277, after he assaulted two men who had accompanied his wife to his home on the day of the assault.

Defendant asserted a claim of self-defense with respect to all three charges. Following a jury trial, he was acquitted of the felonious assault charges related to the two men, but was found guilty of the assault charge related to his wife. Defendant was sentenced to three to ten years' imprisonment. We affirm.

I

Defendant's sole contention is that his constitu-tional right to remain silent was infringed upon when the prosecutor questioned him and the police regarding his postarrest, post-*Miranda* [v *Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966)] failure to assert a claim of self-defense and then further commented upon that failure during clos-ing argument.

Defendant did not object at trial to the questions and comments he now claims prejudiced his case. Accordingly, review is foreclosed absent manifest injustice. *People v Lane,* 127 Mich App 663, 666; 339 NW2d 522 (1983). Manifest injustice is not present here.

II

While in the police car after his arrest, defen-dant stated that he should have killed the victim

and that he hoped that she would die. The statements were not made in response to police questioning and were made at a time when defendant was kicking the seats and pounding on the windows of the patrol car. About one year after the assault, when defendant was being transported by Gerald Barger, an investigator with the prosecutor's office and also a sheriff's deputy, and after defendant was advised of his *Miranda* rights, defendant also told Barger that, instead of assaulting the victim, he should have killed her. Defendant made no claim below and does not claim on appeal that his statements were made in violation of the right to remain silent or that they were in any way involuntary.

At trial, the prosecutor's redirect examination of Barger concluded with the following exchange:

> *Q.* Did the defendant make any statement about this assault being for reasons of self-defense or because he was afraid?
> *A.* No, sir.

During the prosecutor's cross-examination of defendant, the following exchanges occurred:

> *Q.* You didn't say anything to the deputies that night about being afraid for yourself, did you?
> *A.* I was upset at the time.
> *Q.* My question was, you didn't say anything to the deputies that night about being afraid for yourself, did you?
> *A.* No. They didn't question me on that. I was too upset.
> *Q.* Your answer is no? You didn't say that, did you?
> *A.* No. They didn't ask me that, no. They didn't give me a chance to say that.
> *Q.* You had plenty of chances to tell them you wished that she would die?

*A.* I didn't say that in that [sic] words, no.

*Q.* Even one year later when you were in the custody of the police again, you didn't make any claim of self-defense, did you?

*A.* I wasn't being charged for assault that night. I was being charged for something else.

*Q.* My question is—but you talked about this incident with the police that night, with the Oakland County Prosecutor's investigator?

*A.* He brought up something about it, yes.

*Q.* And you didn't mention anything about self-defense then, did you?

*A.* No, I didn't.

*Q.* And you didn't mention anything about you being afraid that night, did you?

*A.* No, I didn't. He wasn't questioning me on that.

During the prosecutor's closing argument, the prosecutor made further reference to defendant's postarrest, post-*Miranda* failure to assert the claim of self-defense:

Those are the rules of self-defense. Now, I'm going to look at the first rule here. The defendant must honestly believe it necessary to prevent bodily harm. I think the first key word here is "honestly." Oh, sure, he gets upon the witness stand two years after the whole thing occurs, "Gee, self-defense." He's got no other defense. He's got to claim something. So he comes up here and he says, "Gee, it was self-defense." Now, you're going to have to decide. Is this a made-up-after-the-fact defense or was he honestly in fear? Consider first of all that he never said anything about self-defense that night. But he did say, "I should have killed the F'ing bitch. I hope she dies. Next time I will kill her." He didn't say, "Gee, I was glad I was able to defend myself."

Even one year later, when he was again in police custody, he made a statement about the

incident to the officers. And he didn't mention one single word about self-defense.

* * *

A violent act such as this cannot be tolerated. He shouldn't be able to wiggle out of it with cute, last-minute claims of self-defense. Your verdict should be guilty as charged.

### III

In *People v Bobo,* 390 Mich 355, 359; 212 NW2d 190 (1973), our Supreme Court stated:

We will not condone conduct which directly or indirectly restricts the exercise of the constitutional right to remain silent in the face of accusation. "Nonutterances" are not statements. The fact that a witness did not make a statement may be shown only to contradict his assertion that he did.

Recently, our Supreme Court refined the rule announced in *Bobo.* In *People v Sutton (After Remand),* 436 Mich 575; 464 NW2d 276 (1990), the plurality opinion stated:

Where silence follows *Miranda* warnings, Fourteenth Amendment due process bars the use of such evidence to impeach a defendant's exculpatory explanation at trial provided that the defendant does not claim "to have told the police the same version upon arrest." *Doyle v Ohio,* [426 US 610, 619-620, n 11; 969 S Ct 2240; 49 L Ed 2d 91 (1976)]. Thus *Doyle* establishes that the discrepancy between a defendant's exculpatory story at trial and his postarrest, postwarning silence is not available to the state to impeach the credibility of the defendant's exculpatory testimony. In this situation, silence has no probative value because "[s]ilence in the wake of these warnings may be nothing more than the arrestee's exercise of these

*Miranda* rights." *Doyle,* p 617. Moreover, it is fundamentally unfair to use a defendant's silence against him when he had been implicitly promised that if he remained silent he will not be penalized.

The *Doyle* Court, however, carefully distinguished the situation before it from a case in which a defendant claims to have told the police the same version upon arrest. [*Id.,* pp 592-593.]

The Court in *Sutton* further stated:

[A] defendant's right to remain silent is protected by the Fourteenth Amendment which precludes the use of a defendant's silence following *Miranda* warnings to impeach an exculpatory story.

However, defendant Sutton did not offer only an exculpatory story, but affirmatively stated and pursued the theory that he had made a postarrest, post-*Miranda* warning statement to the police consistent with his trial testimony. Nothing in the Fifth Amendment or *Bobo* itself allows a defendant to so testify free from contradiction.

In these circumstances, the prosecution was not precluded from rebutting defendant's claims of postcustody statements consistent with his accident defense with evidence of the defendant's postwarning silence. Defendant chose to make affirmative use of his purported coöperation with the police and thus waived the protection the constitution would otherwise have afforded. [*Id.,* pp 599-600.]

Defendant here made postarrest, post-*Miranda* warning statements and at no time claimed that these statements were given in violation of his right to remain silent. Defendant also made no claims at trial that he had made prior exculpatory statements to police. Thus, the issue to be resolved is: Where a defendant knowingly and voluntarily makes postarrest, post-*Miranda* warning state-

ments but does not at that time make an exculpatory statement about any claim of self-defense and does not claim at trial to have made such an exculpatory statement, may the prosecutor question witnesses regarding the defendant's "silence" with respect to the claim of self-defense and comment about that "silence"? We believe that, in such a situation, the defendant has not remained silent and that a prosecutor may properly question and comment about the defendant's failure to assert the claim of self-defense to police at any time before trial.

Had defendant here made no statements to police after he was advised of his *Miranda* rights, there is no question that the prosecutor's questions and comments regarding defendant's silence would have been improper. However, defendant here made postarrest, post-*Miranda* warning statements to the police. The fact that defendant chose to speak without indicating that he was relying on his right to remain silent compels the result that we reach today.

In so finding, we are mindful of our Supreme Court's recent opinion in *People v McReavy*, 436 Mich 197, 221-222; 462 NW2d 1 (1990), where the Court concluded that the Fifth Amendment does not preclude the substantive use of testimony concerning a defendant's behavior and demeanor during a custodial investigation following a valid waiver of his right against compelled self-incrimination. The Court stated:

> When a defendant speaks after receiving *Miranda* warnings, a momentary pause or even a failure to answer a question will not be construed as an affirmative invocation by the defendant of the right to remain silent. [*Id.*, p 222.]

From this, we conclude that a defendant who

speaks following *Miranda* warnings must affirmatively reassert the right to remain silent. There is no indication in this case that, once defendant chose to speak to the police, he affirmatively invoked his right to remain silent with respect to the claim of self-defense.

The Court in *McReavy* also stated:

> Where the record indicates that a defendant's silence is attributable to an invocation of his Fifth Amendment privilege or a reliance on *Miranda* warnings, use of his silence is error. [*Id.,* p 201.]

The record here does not indicate that defendant's silence when he should have asserted his claim of self-defense is attributable to a reliance on *Miranda* warnings.

In *Connecticut v Barrett,* 479 US 523, 528; 107 S Ct 828; 93 L Ed 2d 920 (1987), the United States Supreme Court stated:

> The fundamental purpose of the Court's decision in *Miranda* was "to assure that the individual's right to choose between speech and silence remains unfettered throughout the interrogation process."

Defendant here did not choose to remain silent. He chose to speak. Defendant cannot have it both ways—he cannot choose to speak and at the same time retain his right to remain silent. Absent an affirmative and unequivocal invocation of his right to remain silent following a postarrest, post-*Miranda* warning statement to police, defendant cannot claim that his right to remain silent was infringed by the prosecutor's questions and comments about his failure to assert his claim of self-defense before trial. The prosecutor's questions

and comments here did not result in manifest injustice.

IV

In any event, even if it were error for the prosecutor to have questioned and commented about defendant's failure to assert his claim of self-defense before trial, we are convinced that, given the facts of this case, such error was harmless beyond a reasonable doubt.

Here, defendant's sole defense was his claim of self-defense. The jury must have believed that defendant had acted in self-defense because it acquitted him of the two felonious assault charges. We also note that during deliberations the jury asked to be instructed whether *all* four points pertaining to self-defense had to be met with respect to the charge of assault with intent to commit great bodily harm less than murder. This question from the jury leads us to conclude that the jury properly considered defendant's claim of self-defense. Defendant was not prejudiced by the prosecutor's questions and comments about his failure to assert the claim of self-defense before trial, and those questions and comments were, at most, harmless error.

Affirmed.