*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JARED WALLIS HARTZ,

Defendant-Appellant.

UNPUBLISHED
October 24, 2025
10:17 AM

No. 368491
Oakland Circuit Court
LC No. 2022-282976-FH

Before: REDFORD, P.J., and CAMERON and PATEL, JJ.

PER CURIAM.

Defendant appeals by right his bench-trial conviction of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a). He was sentenced to five years' probation for sexually assaulting his eight-year-old daughter. Finding no errors warranting reversal, we affirm.

## I. BACKGROUND

The victim testified that she lived in the family home with defendant, her mother, and her older brother until her parents divorced in 2018.[1] After the divorce, the victim lived sporadically with defendant. The victim testified that, when she was approximately eight years old, defendant made her touch his genitals when she showered with him in the family home. The victim stated that defendant applied soap to her hand and guided her through the act of touching his penis in a jerking motion. Defendant directed the victim to continue moving her hand "until the white stuff comes out." At the time, the victim did not understand what that meant. The victim testified that the assaults occurred on more than one occasion, but she could not recall the number of occurrences.

The victim's mother testified that she and defendant separated in 2015 or 2016. She explained that she and defendant rotated staying at the family home with the children during the

---

[1] The facts forming the basis of defendant's conviction stem from events that occurred sometime between 2015 and 2016. The victim was 15 years old at the time of trial.

-1-

separation. The victim frequently complained of severe stomach pain during the 2016-2017 school year, but medical personnel could not determine a physical origin of the pain. The victim had a significant number of absences from school as a result of her pain complaints. The victim did not disclose the sexual assaults to her mother or anyone else at that time.

In October 2022, the victim disclosed to her cheerleading coach, Sierra Delvecchio, that she had been sexually assaulted. Delvecchio recalled that the victim stated that the assaults occurred when she was "between 10 and 11" years old. Delvecchio testified that the victim was crying and very shaken up when she made the disclosure. Delvecchio made a report to Children's Protective Services (CPS) a couple of days after the disclosure.

West Bloomfield Police Detective Blake Hayes was assigned to the investigation. Detective Hayes attended the victim's forensic interview at CARE House of Oakland County and observed from a separate room. Detective Hayes attempted to schedule an interview with defendant. Although defendant was initially agreeable to meeting, defense counsel canceled the meeting. Defense counsel informed Detective Hayes that defendant denied the allegations. Defendant did not testify at trial.

During trial, defense counsel elicited testimony that the victim had issues with being truthful after her parents divorced. One instance involved the victim taking underwear from her stepmother. During cross examination by defense counsel, the victim admitted that she took her stepmother's underwear without permission once and lied about it. The victim clarified that when "confronted, [she] ended up giving it back." Defense counsel also asked the victim if she took defendant's wedding ring from his prior marriage. The victim denied the allegation, but clarified, "Not that I'm . . . aware of." When defense counsel asked the victim's mother about the wedding ring incident, she acknowledged that she exchanged text messages with defendant concerning the victim having defendant's ring. However, she testified that she did not have personal recollection of the incident.

The trial court found defendant guilty of one count of CSC-II. The trial court stated that it found the victim's testimony "both unrebutted and credible." The trial court concluded that each element of CSC-II was demonstrated beyond a reasonable doubt. The trial court acknowledged that there was evidence that the victim acted out and took items that did not belong to her. But concluded, "upon a thorough and contemplative review of the record, these incidents do not diminish the credible tenor of [the victim]'s testimony regarding the incident at issue." And while the victim's testimony was "vague at best" on the frequency and number of incidents, the trial court noted that only one incident had been charged and found that the testimony established that the one incident occurred beyond a reasonable doubt.

Defendant was sentenced to five years' probation. In addition to other conditions, defendant was required to "register as required by the Michigan Sex Offender[s] Registration Act [(SORA), MCL 28.721 *et seq.*,] and comply with all of the requirements of the act." Defendant now appeals.

## II. ADMISSION OF EVIDENCE

Defendant argues that the trial court plainly erred when it permitted the prosecutor to question Detective Hayes about whether the victim's statement at the forensic interview was consistent with the CPS notification that he received regarding the allegations. We disagree.

Generally, "[a] trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls outside the range of principled outcomes." *People v Thorpe*, 504 Mich 230, 251-252; 934 NW2d 693 (2019) (cleaned up). Because defendant failed to object to the question posed to Detective Hayes by the prosecutor, his challenge to the detective's testimony is unpreserved. See *id*. at 252 ("To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal."); see also MRE 103(a)(1). We review unpreserved claims of error for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To obtain relief under plain-error review, a defendant must show that an error occurred, that it was clear or obvious, and that it was prejudicial, i.e., that it affected the outcome of the lower court proceedings. *Id*. at 763. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (cleaned up).

During the trial, the prosecutor elicited the following testimony from Detective Hayes regarding his observations of the victim's forensic interview:

> *Q*. But did [the victim] disclose allegations during that timeframe?
>
> *A*. She did.
>
> *Q*. Okay. Was it consistent with your, uh, review of the report that you received?
>
> *A*. It was.

Defendant argues that the prosecutor improperly bolstered the victim's credibility by eliciting the above testimony. "A witness may not comment on or vouch for the credibility of another witness." *People v Lowrey*, 342 Mich App 99, 109; 993 NW2d 62 (2022). Likewise, "[a] witness may not opine about the defendant's guilt or innocence in a criminal case." *Id*. (cleaned up). But a police officer may explain his or her investigatory steps from his or her personal perceptions. *People v Heft*, 299 Mich App 69, 82-83; 829 NW2d 266 (2012).

Detective Hayes did not vouch for the victim's credibility. Vouching occurs when one witness opines that another witness is telling the truth or is worthy of belief. *Lowrey*, 342 Mich App at 109. Detective Hayes did not describe what the victim stated or what was reported by CPS. He did not testify that he believed the victim's allegations were truthful. He also did not comment on whether the victim's trial testimony was truthful. He simply testified regarding his investigatory steps and thought processes, including that he observed the victim's interview and

-3-

the statements in the interview were consistent with the allegations reported by CPS. Detective Hayes' testimony, which did not comment on or provide an opinion on the credibility of the complainant, was not improper vouching.

## III. RIGHT TO REMAIN SILENT

Defendant further contends that his right to remain silent was violated when the prosecutor elicited from Detective Hayes that defendant did not participate in a prearrest interview with the detective. We disagree.

Because defendant failed to object to the question posed to Detective Hayes by the prosecutor, his challenge to the detective's testimony is unpreserved, *Thorpe*, 504 Mich at 251-252, and thus our review is for plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 763-764.

Both the United States and Michigan Constitutions protect the right to remain silent. US Const, Am V; Const 1963, art 1, § 17. This constitutional protection "forbids either comment by the prosecution on the accused's silence at trial or instructions by the court that such silence is evidence of guilt." *People v Clary*, 494 Mich 260, 265; 833 NW2d 308 (2013) (cleaned up). However, a defendant's constitutional guarantees are "implicated only where his silence is attributable to either an invocation of his Fifth Amendment right or his reliance on the *Miranda*[2] warnings." *People v Solmonson*, 261 Mich App 657, 664-665; 683 NW2d 761 (2004). "Thus, where a defendant has received no *Miranda* warnings, no constitutional difficulties arise from using the defendant's silence before or after his arrest as substantive evidence unless there is reason to conclude that his silence was attributable to the invocation of the defendant's Fifth Amendment privilege." *Id*. at 665.

Defendant argues that his right to be free from self-incrimination was violated when Detective Hayes described that defendant failed to meet with him to discuss the case. Specifically, defendant takes issue with the following exchange between the prosecutor and Detective Hayes:

> *Q*. Okay. And did you schedule a meeting with Jared Hartz?
>
> *A*. I did.
>
> *Q*. And was the purpose of that meeting like you had testified to earlier just for him to provide a statement to you?
>
> *A*. Correct.
>
> *Q*. Did he—did he meet with you and . . . provide you with a statement?
>
> *A*. He did not end up meeting with me. He initially was agreeable to meeting. I believe it was following work. A tentative time was scheduled and then

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

shortly before, uh, the meeting time, I received a phone call from Defense Counsel advising that that meeting would no longer be taking place.

* * *

*Q.* [And you didn't] take a statement from him in this case?

*A.* No. I—I did receive information later once I did speak with his Defense Counsel that his, uh, statement on behalf of his client was that he alleged that he did not carry out any of the acts alleged.

Detective Hayes testified that these discussions with defendant took place before he submitted the case to the prosecutor for a warrant. There is no indication in the record that defendant was read his *Miranda* rights or invoked his constitutional right to silence when his attorney advised there would be no meeting. Acknowledging this deficiency in the argument, defendant posits that while prearrest silence may be admissible for certain purposes, it is not admissible as substantive evidence of defendant's guilt. Contrary to defendant's assertion, the colloquy between the prosecutor and Detective Hayes did not elicit testimony regarding evidence of defendant's guilt. As we stated above, police officers are permitted to testify regarding their investigatory steps and thought processes. *Lowrey*, 342 Mich App at 114-115.

Defendant also contends that he "exercised his Fifth Amendment right" by declining to meet with Detective Hayes. We find no merit in this argument. The fact that defendant did not meet with Detective Hayes cannot be construed as an invocation of the right to remain silent. See *People v Davis*, 191 Mich App 29, 36; 477 NW2d 438 (1991) ("Absent an affirmative and unequivocal invocation of his right to remain silent following a postarrest, post-*Miranda* statement to police, defendant cannot claim that his right to remain silent was infringed by the prosecutor's questions and comments about his failure to assert his claim of self-defense before trial."). Defendant has failed to show plain error in the challenged testimony.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

As alternatives to the previous two issues presented, defendant argues that his trial counsel was ineffective for failing to object to the testimony made by Detective Hayes concerning corroboration of the victim's testimony and defendant's prearrest silence. Defendant also contends trial counsel was ineffective for failing to obtain the victim's "counseling" records. We disagree.

An ineffective-assistance-of-counsel claim presents a "mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). Generally, we review de novo constitutional questions, while we review the trial court's findings of fact for clear error. *Id.* To preserve a claim of ineffective assistance of counsel, a defendant must raise the issue in a motion for a new trial or a *Ginther*[3] evidentiary hearing filed in the trial court, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), or in a motion to remand for a *Ginther* hearing filed in this Court, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

did none of these things and thus our review of this unpreserved issue is limited to errors apparent on the record. *Abcumby-Blair*, 335 Mich App at 227.

The United States and Michigan Constitutions afford criminal defendants the right to effective assistance of counsel. *Yeager*, 511 Mich at 488, citing Const 1963, art 1, § 20; US Const Am VI; *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To prevail on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different." *Yeager*, 511 Mich at 488 (cleaned up). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (cleaned up). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (cleaned up). We will not find trial counsel to be ineffective where an objection would have been meritless or futile, *id*., nor will we second-guess matters of trial strategy or "assess counsel's competence with the benefit of hindsight[,]"*Abcumby-Blair*, 335 Mich App at 237 (cleaned up). This Court has explained that failing to object may be a matter of trial strategy because "there are times when it is better not to object and draw attention to an improper comment." *People v Unger (On Remand)*, 278 Mich App 210, 242; 749 NW2d 272 (2008) (cleaned up).

First, defendant argues that his trial counsel was ineffective for failing to object to Detective Hayes's statement that the victim's interview was consistent with the information he had in his report. As we explained above, neither Detective Hayes nor the prosecutor engaged in improper bolstering of the witness's testimony. Trial counsel cannot be deemed ineffective for failing to raise a futile objection. *Head*, 323 Mich App at 539.

Defendant also contends that his trial counsel was ineffective for failing to object to Detective Hayes's statement that defendant did not meet with him for an interview before he obtained the arrest warrant. As we explained above, this statement made by Detective Hayes was not improper because it was made on the basis of defendant's actions before he was interrogated or read his *Miranda* rights. Trial counsel cannot be deemed ineffective for failing to raise a futile objection. *Head*, 323 Mich App at 539.

In addition, defendant argues that his trial counsel was ineffective for failing to obtain the victim's counseling records. According to defendant, "[t]here was no reasonable strategic consideration which would explain why trial counsel did not seek a review of the records." His assertion, however, that the counseling records would have been relevant (assuming their admissibility) is complete speculation. Defendant does not explain what counseling the victim underwent such that there would be records of her meetings. Instead, defendant merely posits that the undescribed records "could show" evidence that the victim was not consistent in her disclosures.[4] Our Supreme Court has cautioned against allowing a defendant to embark on a

---

[4] Defendant also asserts: "*If* there were records that would explain why she did not disclose earlier or even cast doubt on the veracity or credibility of the disclosure, this evidence *would be* critical to the defense." (Emphasis added.)

fishing expedition for privileged counseling records in cases involving criminal sexual assault. See *People v Stanaway*, 446 Mich 643, 681; 521 NW2d 557 (1994). The defendant in *Stanaway* sought the victim's counseling records, "alleg[ing] that the records *may* contain prior inconsistent statements." *Id*. (emphasis added). Noting that the need for useful evidence for cross-examination and impeachment "might exist in every case involving an accusation of criminal sexual conduct," the Court stated, "Without a more specific request, defendant is fishing." *Id*. at 681. The Court concluded that the defendant failed to provide "any specific articulable fact that would indicate that the requested confidential communications were necessary to a preparation of his defense"; or "a good-faith basis for believing that such [inconsistent] statements were ever made or what the content might be and how it would favorably affect his case." *Id*.

Similarly, in this case defendant offers speculation, but no proof, that the records had any bearing on the proceedings. He has failed to offer any facts that describe how the records sought were necessary to counter the victim's accusations. He has also failed to offer a good-faith basis to show that the records even exist, let alone contain inconsistent statements from the victim regarding defendant's sexual assault. Defense counsel was not ineffective for failing to advocate for a meritless position. See *Head*, 323 Mich App at 539.

## V. VICTIM'S "UNREBUTTED" TESTIMONY

Defendant also contends that the trial court erred when it found that the victim's testimony was unrebutted because it evidenced the court's decision to penalize him for not testifying at trial to rebut the victim's accusations. We disagree.

"A trial court's factual findings in a bench trial are reviewed for clear error; its conclusions of law are reviewed de novo." *People v Pennington*, 323 Mich App 452, 464 n 7; 917 NW2d 720 (2018). A factual finding is clearly erroneous if the appellate court is "left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). We give special deference to the trial court's findings when those findings are based on witness credibility. MCR 2.613(C).

As discussed, both the United States and Michigan Constitutions protect the right to remain silent. Const 1963, art 1, § 17 ("No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law."); US Const, Am V ("No person . . . shall be compelled in any criminal case to be a witness against himself[.]"). Moreover, under MCL 600.2159, "[a] defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect." Consistent with this statute, "[a] prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). Similarly, "a prosecutor may not comment on the defendant's failure to present evidence because it is an attempt to shift the burden of proof." *Id*. at 464.

However, "a prosecutor's argument that inculpatory evidence is undisputed does not constitute improper comment." *Id*. "A prosecutor may also argue that the evidence was

-7-

uncontradicted even if the defendant is the only person who could have contradicted the evidence." *Id.* See also *People v Fields*, 450 Mich 94, 115; 538 NW2d 356 (1995) ("[W]here a defendant testifies at trial or advances, either explicitly or implicitly, an alternate theory of the case that, if true, would exonerate the defendant, comment on the validity of the alternate theory cannot be said to shift the burden of proving innocence to the defendant.").

Applying this caselaw analogously to the trial court's findings, the trial court never stated, as defendant asserts, that it "considered Mr. Hartz's failure to testify." Rather, the court made the rather unremarkable observation that the victim's testimony was not contradicted or rebutted by any of the witnesses who testified at trial. This was a factual statement from which the trial court did not make any observations regarding defendant's silence. While it is true that *in this case* the only apparent witness who could have rebutted the victim's testimony was defendant, such an innocuous remark by the trial court was not improper. *Fyda*, 288 Mich App at 464. Moreover, this was a bench trial. The trial court was "presumed to know the applicable law[,]" *People v Lanzo Constr Co*, 272 Mich App 470, 484; 726 NW2d 746 (2006), which included that defendant's silence during trial could not be held against him. Without any additional indicia that the trial court considered defendant's silence as indicative of his guilt, we cannot say that it was error for the court to conclude that the victim's testimony was unrebutted.

## VI. SORA

Defendant further argues that requiring lifetime registration as a sex offender under SORA is cruel or unusual punishment under the Michigan Constitution. In addition, defendant contends that imposition of SORA reporting requirements would constitute an ex post facto punishment. We disagree.

Defendant failed to preserve this issue by raising it in the trial court during sentencing. See *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021) ("To preserve a claim that the defendant's sentences were unconstitutionally cruel or unusual, the defendant must raise the claim in the trial court."). Accordingly, our review is for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

"Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011) (cleaned up). The United States Constitution prohibits the infliction of "cruel and unusual punishments," which applies to the states through the Fourteenth Amendment. US Const, Ams VIII and XIV. See also *People v Sinclair*, 387 Mich 91, 150; 194 NW2d 878 (1972). The Michigan Constitution has adopted similar language, stating that "cruel or unusual punishment shall not be inflicted[.]" Const 1963, art I, § 16. Because the Michigan Constitution uses the disjunctive "or" and not the conjunctive "and" found in the United States Constitution, "[i]n an appropriate case, the Michigan Constitution's prohibition against 'cruel or unusual' punishment may be interpreted more broadly than the Eighth Amendment's prohibition against 'cruel and unusual' punishment." *Carlton v Dep't of Corrections*, 215 Mich App 490, 505; 546 NW2d 671 (1996).

In addition to prohibiting cruel and unusual punishment, the United States Constitution also prohibits the enactment of ex post facto laws by the states. US Const, art I, § 10 ("No State

shall . . . pass any . . . ex post facto Law"). Michigan has also adopted similar language in its constitution, which states, "No . . . ex post facto law . . . shall be enacted." Const 1963, art I, § 10. "The Ex Post Facto Clauses of the United States and Michigan Constitutions bar the retroactive application of a law if the law: (1) punishes an act that was innocent when the act was committed; (2) makes an act a more serious criminal offense; (3) increases the punishment for a crime; or (4) allows the prosecution to convict on less evidence." *People v Earl*, 495 Mich 33, 37; 845 NW2d 721 (2014).

To demonstrate that an individual was subjected to cruel or unusual punishment, there must first be a punishment imposed. *People v Jarrell*, 344 Mich App 464, 483; 1 NW3d 359 (2022). Citing *People v Betts*, 507 Mich 527, 562; 968 NW2d 497 (2021), defendant contends that imposition of SORA registration requirements constitutes punishment. But our Legislature enacted 2020 PA 295 (2021 SORA), effective March 24, 2021, to "cure its constitutional infirmity" by reducing or eliminating certain conditions. *Id*. at 566.[5]

In *People v Kiczenski*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364957); slip op at 13, we concluded that "the 2021 SORA does not constitute punishment as applied to CSC-I offenders" under the Ex Post Facto Clauses of the federal and state constitutions. Relying on *Kiczenski*'s determination that the 2021 SORA does not amount to punishment, we concluded in *In re Harder*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 368645); slip op at 11, that a Tier II offender's mandatory registration under the 2021 SORA does not constitute cruel or unusual punishment.

Defendant's CSC-II conviction under MCL 750.520c(1)(a)—like CSC-I—involves a sexual offense committed against a "young and vulnerable" victim. See *Kiczenski*, __ Mich App at __; slip op. at 11. Defendant is classified as a Tier II offender under SORA. MCL 28.722(t)(*x*). For the same reasons articulated in *Kiczenski* and *Harder*, we conclude that lifetime registration under the 2021 SORA does not constitute punishment for a CSC-II offender. Defendant has therefore failed to show that lifetime registration under the 2021 SORA constitutes cruel or unusual punishment. Similarly, because registration under the 2021 SORA does not constitute punishment, there are no ex post facto considerations.

## VII. JUDICIAL DISQUALIFICATION

Defendant contends that the trial court judge was not impartial or unbiased and thus he must be afforded a new judge on remand. We disagree.

---

[5] The 2021 SORA amendments included "the removal of the student-safety zones; the removal of the retrospective application of in-person reporting requirements for vehicle information, electronic mail addresses, Internet identifiers, and telephone numbers, MCL 28.725(2)(a); and the removal of registrants' tier-classification information from the public website, MCL 28.728(3)(e)." *Betts*, 507 Mich at 566.

Defendant did not preserve this issue by filing a motion to disqualify under MCR 2.003. *People v Loew*, 514 Mich 158, 180 n 10; 22 NW3d 323 (2024). Accordingly, our review is for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

The following factors are used to assist a reviewing court's determination of whether remand to a different judge is required:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. [*People v Hill*, 221 Mich App 391, 398; 561 NW2d 862 (1997) (cleaned up).]

Because we have determined that there were no errors that require remand, reassignment to a different judge is unwarranted and unnecessary.

## VIII. CUMULATIVE ERROR

Lastly, defendant contends that even if any one of the errors identified do not warrant reversal, the cumulative effect of the errors deprived him of a fair trial. We disagree.

"We review this issue to determine if the combination of alleged errors denied defendant a fair trial." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *Id*. "Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *Id*.

As discussed, we have discerned no errors from the proceedings below. Accordingly, reversal on the basis of cumulative error is not warranted.

Affirmed.

/s/ James Robert Redford
/s/ Thomas C. Cameron
/s/ Sima G. Patel

-10-